When you're ready. Thank you, Your Honor. May it please the court, counsel. My name is Philip Graves. With me at council table is my colleague Marjorie Witter. We represent STAMPS.COM. The District Court's judgment dismissing the action in its entirety cannot stand due to several instances of prejudicial legal error. The first of which involved the District Court incorrectly assigning the burden of persuasion by clear and convincing evidence to STAMPS.COM with respect to the issues of anticipation and obviousness on two of the patents at issue, the 214 and the 777 patent. I'm not understanding how the 214 is affected. I've read the declarations and assuming that the reply declarations were considered, they don't say anything about reducing the 214 to practice. They do talk about reducing the 777 to practice. There are four declarations, Your Honor, that were submitted. But where's the declaration that says that the 214 was reduced to practice? Certainly, there are two. The first is a declaration of Martin Poggle. You're going to have to show me in the appendix. Certainly, Your Honor. Not your recollection of what's in the appendix. All right. Well, Your Honor, I'll get the record site for the first Poggle declaration. I can give you record sites for the second. I know where, I've read the declarations. I want to see where any of them says that the 214 was reduced to practice. I don't see that. I do see that with respect to the 777. I don't see it with respect to the 214. Okay. So with respect to the first Poggle declaration, the declaration itself does not expressly state that the 214 was reduced to practice. However, the declaration does refer to and authenticate a documentary piece of corroboration that was submitted, which is the engineering status report from November of 1998. So there isn't any statement in those declarations? No, I'm just talking about the first declaration. We'll get to the second declaration in a minute because that does expressly state it. But I want to point out to the court that there are... So where is the second expressly stated? The second one expressly states that... Let's see. So paragraph 17 to 18, A11371, Mr. Poggle states after pointing out his conception date, he states that he began working on the implementation of the VPSD, which is the virtual postage storage device. Which paragraph, William? 17 and 18, Your Honor, and there's more to come. Mr. Poggle discusses the work that they did to implement an adequate VPSD, including looking at several different postage vaults, which are pieces of hardware. They're cryptographic coprocessors. And Mr. Poggle stated that they ultimately settled on the IBM 4758 cryptographic coprocessor. So, Your Honor, that's paragraph 17 to 18, page A11371. And then moving on... I'm sorry? Go ahead. You were going, I guess, to 19 and 20? That's exactly right, Your Honor. As well, that speaks to the work that they did regarding the bulk storage of the customer accounts. It's the second sentence of 20 that you're relying on particularly? One moment, Your Honor. Well, there's the first sentence, where he discusses, states that they diligently, we diligently worked to reduce the VPSD concept to practice. And they developed a proof-of-concept system, an actual physical embodiment, demonstrating the workability of the VPSD. In the period late 1998 to very early 1999. And then he goes on in the second sentence to further elaborate and link that specifically to the asserted claims of the 214 patent. But isn't that after the critical date here? No, the critical date with respect to the 214 patent is October of 1999. The critical date with respect to the 777 is February 98. But the 214, it's October 99. I understand, Your Honor. Okay, so we have actually four full paragraphs of direct testimony regarding reduction of practice on the 214. And that's critical here because stamps.com's burden was only a burden of production. The court ruled that stamps.com had the ultimate burden of persuasion by clear and convincing evidence with respect to the inventor swearing behind. But as we know from the cases that we cited, I believe the Rescue Net case was one of them. That is legal error. In fact, stamps.com's burden was not the burden of persuasion, which always rests with the defendant, the party asserting the affirmative defense and counterclaim of invalidity, but rather only a burden to produce evidence in response to the prior art that was proffered by the defendant. That's exactly what stamps.com did. The showing that's been made in actually three declarations from Mr. Poggle. There were the first two, which were shorter and which attached the engineering status reports. And then there was a second Poggle declaration that was submitted with the cross motion on summary adjudication in response to PSI's assertion of the invalidity defense in support of its unenforceability defense. And there was a corroborating declaration of Manish Desai, which corroborated, further corroborated, in addition to the engineering status reports, the testimony of Mr. Poggle with respect to both the 777 patent and the 214 patent. I'd also like to point out, Your Honor, that the, as I mentioned before, the November 1998 engineering status report that Mr. Poggle authenticated and referred to in his first declaration, as well as his, the second, referred to a VPSD. And that's why that engineering status report is important. Now, the defendant submitted a declaration from their expert who said, you know, I read this and I don't know what it means. Well, obviously he didn't read Mr. Poggle's declaration because Mr. Poggle specifically said, you know, this, in referring to the VPSD. VPSD is, you know, it was a very specific term. It meant virtual postage storage device. It's exactly the term that's used in the 214 patent to refer to and to describe the inventions, the invention that is recited in the claims of the 214 patent in the specification. That term VPSD was used in that engineering status report from November of 1998. It makes it very clear that not only had Mr. Poggle conceived of the invention, you know, the time he said he did in 1997 and 1998, but that e-stamp, the company he was then working for, actually had possession of a physical embodiment of the invention that he had conceived, you know, almost a year before the priority date for the prior art. Can I get you to turn to the claim construction issue? Because that bears on the validity question with respect to several of the patent claims. Sure. That are an issue. The terms postage in DCA in the 597 and the 980 and postal in DCA in the 808. The question is, do those terms require the inclusion of actual postage? Yes, unequivocally. Why do you think that they do? For several reasons. First, it's notable that in the court's claim construction order, the court acknowledged that printing the amount of postage is the very object of the 597 patent. Okay, maybe the best way to get at what my concern is by is by asking rather than having you recite why the reasons you think it does, but rather than ask you to look at on A14863, this is the 597 patent, figure 15A, which is described as illustrating the postage in DCA and 15B also illustrates postage in DCA that's been personalized. Neither of which appears to have postage. They're simply graphical displays. Right. Why isn't that evidence that the term postage in DCA does not include the actual postage? Well, because the term postage in DCA is used in the patents to refer not only to the graphical representation, but to the amount of postage as well. Let's take a look at it. I'm not understanding this because it seems to me nobody's disputing that the actual postage has to be there, that the claim requires that the amount of postage be there. In some of these claims, it refers to postage and postage in DCA. Separately. Separately. A and B, which suggests that A does not necessarily contain B. That's the problem. Now, what's the answer to why that A and B means A plus B plus B? Yes. Well, to respond to one point that the court made, the defense has actually taken the position that it is not required by the claims of the 597 or the 980 patent that actual postage be printed. The defense has taken the position that simply printing out an imprint that says put a stamp here is sufficient to satisfy those claims. Well, they've relied on, what is it, the 562, which shows actual postage as prior art, which renders this obvious. I don't understand them to be contending that actual postage is not part of these claims. Maybe I'm mistaken. Well, I believe they have, Your Honor, but you are correct that they do assert the 562 as an obvious misreference. If the court will just indulge me for a moment. Yes. So at column one, lines 24 to 31. This is in the 597? Yes, Your Honor. It's in the 597. I'm sorry, Your Honor. That's the 980. Well, what's the answer to Judge Preissen's question where the claims use postage and postage indicia as separate terms? And that sort of suggests that the amount of postage is within the term postage and the postage indicia means something else. Yes. So reading the text, this is in the technical field of the invention stated in the 980 patent, which also incorporates the term postage indicia. The quote is, more specifically, the invention relates to a system and method for creating postage indicia in conjunction with a word processing document for displaying under transferring the indicia on the front of an envelope. The system will calculate the postage due and personalize the postage indicia. So that indicates that actual postage is required to be a part of an element of the postage indicia. Where were you reading from? What was the page? Certainly. It's A149. Is this the 980? Yes, it is, Your Honor. And what line? Certainly. It's column one, lines 24 to 31. And the page is A14974. And when the court is finished, I have another site as well. Column one, what line? 24 to 31. The technical field of the invention. That's correct, Your Honor. And there is a similar quote from the 597 patent, column 116 to 22. And that would be page 14865. Again, referring to calculating an amount of postage due, personalizing the postage indicia, and printing the amount of postage. That doesn't suggest to me that postage indicia necessarily is the amount of postage. It does suggest that the claims require that the amount of postage be there, but it doesn't necessarily indicate that the term postage indicia is what requires that. Well, Your Honor, that is the evidentiary support in the record for that position on claim construction. We believe that... Well, let's just take claim one of the 597, just starting from scratch. The last means... This is at 14873. The last of the means clause says, means for printing said created postage and postage indicia. Now, your take on that is that postage indicia includes the created postage? Yes, Your Honor. So that reads, means for printing said created postage and created postage plus other items, which is a very strange structure, it seems to me. Well, it can be harmonized in this way. You know, the postage is created by the operation of the system. In other words, the data defining the postage imprint is created by the operation of the system that's recited in claim one. So what the system is doing is printing out the data and the overall postage indicia. That's the system or the process. What difference does it make? I mean, as Judge Bryson points out, it seems to be repetitive. But even if you're right, what difference does it make in terms of the validity of this claim, whether it says it once or it says it twice? Well, with respect to the, we would agree, ultimately, that postage, that the claims require printing of an actual amount of postage independently of the construction of postage indicia. Is the problem that some of the claims use only postage indicia without referring to postage? That's not the case in the 597 or 980, Your Honor. Now, it's important to note that the 808 patent uses a somewhat different term, post-stolen indicia. The 808 patent, which is not related to the 597 or the 980, does not suffer from the possible redundancy issue that the court has pointed out with respect to including an amount of postage in the term postage indicia. So if the court is inclined to analyze the term or to look at the term postage indicia as possibly being redundant with respect to including the amount of postage, then it should look separately at postage indicia as used in the 597 and the 980 and post-stolen indicia as used in the 808. And it's your view that if we were to construe, as you do, postal, not postage, but postal indicia in the 808, how does that affect the validity analysis in that patent? Well, it creates an additional hurdle that the defendants need to overcome in order to demonstrate that the 808 patent is invalid. They've cited to prior art that it does not have the ability to print out actual amounts of postage. Basel, for example. Exactly, exactly. But they pointed to the 562, which does require printing out the postage. For the 597 and the 980, Your Honor, but they did not point to the 562 with respect to the 808. The 808 patent is one of the two patents involving how you print the actual postal indicia on an envelope in a way that's compliant with postal service regulations. The problem was that printers have limits in terms of how close you can get to a page, and the postal service has requirements that it imposes on postage vendors and anyone mailing a letter that you have to get within very, very tight tolerances of the edge of an envelope for printing out a facing identification mark, for example, and a postal indicia. Well, the postal or the postage is implemented, I take it, in these inventions by the barcode, right? It is incorporated within the barcode, yes. So that's how the postage is presented to the postal service, when the image is printed on the surface of the package or whatever, right? That's exactly right, Your Honor. So if that's so, then isn't it the case that in the 808 patent, the dependent claims to Claim 39, Claim 39 referring to just the postal, I think, well, it's actually independent Claim 36 on which Claim 39 depends, referring to postal indicia. It has to be assumed that that includes something other than the barcode that is then referred to in dependent Claims 40 and 42 and 45. Don't those dependent claims suggest to us that the postal indicia does not include the barcode? No, Your Honor, because those dependent claims refer to additional types of information that can be incorporated within the postal indicia. So the barcode is not the sum total of the postal indicia. If you look on a typical letter, for example. Well, but you say the barcode, I think what your response to me earlier, is the barcode is an integral ingredient of the postage portion of whatever's printed. I would actually say the opposite. I would say that the postage is an integral ingredient of the barcode. Okay, well, in either event, the barcode, the presence of the barcode is, sum and substance, the presence of postage. The postage is typically one of the fields within the barcode. So if there's no barcode, there's no postage. Well, I wouldn't say that. But there is also typically a human-readable imprint showing an amount of postage, 41 cents or whatever. But the way the Postal Service processing system works now, the only way the Postal Service can process the enormous quantities of mail is to use barcode scanners hooked up to computers. Let me ask you this question. Go ahead. I don't want to cut you off. Finish your answer, please. Certainly. So that's why I say the postage is one of the fields within the barcode. But the barcode itself is a component of a postal indicia, which can also include, for example, the FIM referenced in Claim 40, the human-readable portion, which would be the human-readable 41 cents, and typically there may be a meter number and so on as well. All right. If you have any further thoughts, this is a very complex case and we won't hold your feet to the fire on time, but if you had another issue that you thought it was important that we consider, we'll give you a little more time. Thank you, Ronner. Just briefly, I mean, as the Court points out, there are a number of issues to cover here. I think another very important issue relates to how the District Court dealt with the expert testimony, the expert declarations, that were submitted by the parties. It appears that the Court put itself in the shoes of the finder of fact and simply decided to credit the expert testimony of PSI's expert, Dr. Tygar, and did not even address, in the order, much less... What issue are we talking about? Well, we're talking about primarily obviousness with respect to the 998, 777, 451, and 808 patents. Professor McDaniel submitted a lengthy, detailed declaration regarding his that the defendant cited. The Tygar Yee article, the 562 patent, and so on. On the one hand... It's an awfully general way of approaching it, which seems to be part of the problem here. Sort of like mush, you know? I mean, you've got to be specific. Which patent, you know, where's the conflict in expert testimony about what limitation, what issue? Certainly, Your Honor. Well, part of the problem is that the Court simply didn't outline its analysis very well or its reasons for why it failed to credit, much less acknowledge the expert testimony submitted by stamps.com. So, you know, in reality, what we are doing is we are pointing to the entirety of the McDaniel report and saying, what happened here? You know, why did the Court put itself in the shoes of the finder of fact when it was addressing or dealing with a summary judgment motion? But to get down to specifics... Which I can point the Court to in just a moment. For example, with respect to the 991 patent, Professor McDaniel submitted eight pages of explanation regarding his opinions and the basis for those opinions. And those opinions were that the Tigar Yee article from 1990, that they dated 1993, and the 562 White House patent neither anticipated nor rendered obvious the asserted claims of the 991 patent. Why not? Well, for quite a few reasons. And I can detail them to you now, but I think the important point is that Professor McDaniel provided that reasoning. And I can point you to the record sites. It's A10403 to 411. And I can walk you through paragraph by paragraph. It would take a long time, but the point is none of that is reflected in the District Court's opinion. And this is... Give me one example. Give me one example where McDaniel gave some specifics which the District Court ignored. Absolutely, Your Honor. We have two. So, for example... And really, I'm plucking this at random because there are so many... There are so many examples. On page 10403... Which claim are we talking about? We're talking about claims 7 and 42 of the 991 patent. Okay. And this is Professor McDaniel referring to the Tigar Yee reference, which, by the way, we've sort of skipped over the fact... You have a prior art dispute with respect to Tigar Yee. As to whether it was actually published, correct. And that's discussed in the brief. Assuming that we get by that question, then we have McDaniel. Yes, thank you, Your Honor. So, paragraph 15, page A-10403, Professor McDaniel states, Tigar Yee does not disclose a system for transferring a predetermined amount of postage value or any type of representative value via a network in response to a request for value to be printed and then printing and incorporating the predetermined amount of value. He goes on at great length to explain and to point out, in the Tigar Yee article, why that is so. That is a key fact because... Is this the difference between bulk postage and individualized? Exactly, exactly. That's exactly right. You know, this concept of bulk refilling over a network was nothing new. Postage meter type situation. Exactly. That's exactly right. And that's all that Professor Tigar was referring to in Section 5.2 of his article. Yet, the defense has blown that up and pointed to that as an example of a disclosure of the invention that's recited in Claims 7 and 42 of the 991 patent. It's simply not. And Professor McDaniel explains at great length why it is not and why the article fails to disclose what is recited in these claims. You know, again, I could just walk through the declaration reading it into the record, but I'm sure that there are more efficient uses of all of our time. The point is that this is an appeal from a summary judgment motion. So the court was required to consider expert evidence that is non-conclusory. And Professor McDaniel's declaration is far from conclusory. It is detailed. He explains the bases for his reasoning. Now, ultimately, a finder of fact may disagree with Professor McDaniel. We believe he's correct. Finder of fact may disagree, but that's not the judge's province in ruling on a summary judgment motion. Could I ask you, very briefly, to address one other issue, which is if you could turn... I know we're throwing you from one patent to another, but it's the nature of the case. If you could turn to, let's see, the 568 patent claim 21, which is at 15028. This is the indefiniteness issue with respect to the means for determining a value of said transaction. Yes. What is the specification support, as you see it, for that means plus function recitation? Certainly, Your Honor. So, the specification support, primarily, is... I mean, we've cited it in our brief. I'll point you to what I think is probably the most pertinent portion, which is column 22, lines 13 to 48. Which page are we on here? 15022, Your Honor. And, most specifically, lines 13 to... looks like line 19. Here, the e-stamp program, or rather, the specification is stating that the e-stamp program, which is obviously programming running on a processing system, will automatically incorporate specific parameters that are pointed out, weight, class, and zone, in order to correctly calculate the correct amount of postage. That sounds like a functional description rather than a structure. Well, it's really not, though, Your Honor, because the important issue is what parameters are used to calculate the postage. What parameters are used to calculate the postage? You know, the actual act of adding numbers together is, of course, trivial. And if the court's authority with respect to indefiniteness in software cases required patentees to set out in the specification the precise programming steps for adding two numbers together, what you would end up with is specifications... A lot of code. What's that? We'd have a lot of code in the applications. Exactly, Your Honor, and no purpose would be served by that. You know, the specifications of that level of detail are not required in order to serve the notice function of the specification. So here what we have, what's most important, because the actual calculation is trivial, the most important thing is that the specification points out what is being calculated in order to determine the value. And it's the weight, class, and zone of the item that is to be mailed. And plugging that in is... You know, once that is specified, the rest is trivial. Thank you, Mr.... Thank you very much, Your Honor. We'll save you some rebuttal time we've gone well over, but I appreciate your assisting the court. I appreciate the court's indulgence. Let's see, we have Mr. Long. May it please the court, Gregory Long, on behalf of the defendants below, PSI and Indicia, with me is Dennis Smith of my office. I agree with one thing that Mr. Gray said and what the court said, this is a complex case and one can dive in in any number of places and begin. Where I thought we should begin is to reiterate that I believe that the second and third issues raised in the brief by my opponents have been waived or they are stopped from raising them. And then, those go to the issues of whether the district court could properly limit the representative claim number to fifteen and that those representative claims would then be dispositive of all claims in suit. And we've laid out the factual basis for our belief that counsel for stamps.com agreed with the district court. Excuse me, I've been fighting this cold. That the district court both had the authority to do so and then specifically said to the district court that they would not litigate more than the fifteen chosen representative claims in that litigation. What about the things that they've argued? What about the things that they've argued here today? What about the effort to swear behind the references with respect to the 777 and 214? We believe as we set forth at pages 34 and 2 of our brief, Your Honor, that the two first Pagel declarations are uncorroborated in the first instance. What about the second ones? They are pretty specific about reduction to practice, right? The second set of declarations were filed with their reply brief in an entirely separate motion. They brought a motion for summary judgment as to our affirmative defenses and in their motion submitted no declarations. Then we opposed and then they filed a reply in which these second set of declarations were attached. It appears to me to be a tactic to get around the fact that they had failed in response to our motion to submit sufficient evidence to oppose the motion and they used the availability of the reply in the second motion to try to recoup their failure in the first and under Ninth Circuit authority, the district court we believe was acting well within its discretion simply to disregard the second set of declarations. Your Honor, we don't really know what the district court did since they didn't mention these other declarations, right? There is no specific statement from the district court that that was the reasoning, Your Honor, but certainly the fact that the district court did not mention them is entirely defensible and within the district court's discretion given the agreed to facts of the situation. Now, if we, if the court were to reach those declarations, I still believe that they are conclusory and do not sufficiently establish reduction to practice of the entire invention. For instance, the virtual security device that counsel mentioned is only a part of the total invention claim and the declarations do not say how the entire invention claim was reduced to practice. But you don't contend as I understand your brief that the district court has not applied the correct standard. Correct, we do not. He just got, he said clear and convincing burden on them and that's just wrong. That's right. I think that it's not, it's wrong but it's harmless in the sense that we believe that these declarations are so deficient. The first two particularly which are supported only by the executive status reports one and two which come after the critical date and are so unintelligible that even stamps.com in its reply brief admits that they were quote somewhat late close quote and says that they should still count even though they're unintelligible to any person except the inventor which is a proposition that seems strange to me. So in order to affirm on this basis you're suggesting that what we do is assume that the first two don't work and the others we would apply the ninth circuit precedent in terms of reply brief even though the district court didn't tell us that that's what he was doing. Correct, you are. Yes. What about the postal addition? Does that make a difference as to any of these patents? I mean are you contending that put aside the I guess the what is it, the 808? 808, yeah. Put aside the 808 with respect to the other patents does it make any difference how postal addition is construed? I don't think it does, Your Honor. In our brief we said we don't understand why this argument has been accorded so much space and time because the district court clearly construed the claims to require the amount of postage. Now initially our position before the district court was that it didn't require the exact amount as in 32 cents or 41 cents because in Dazzle prior at Dazzle an envelope manager you could print a franking number or a penalty postage indicia which would be good for mail. You could put it into the United States Post and have it delivered. But you say it doesn't matter because of what the district court construed that language to mean. Suppose that we should conclude that the language well given the two options between saying that the language as Mr. Graves said incorporates an actual requirement of actual postage not just a box that says put 32 cents stamp here but rather a box that has the barcode versus the position that postage or postal indicia doesn't require any postage as such does that distinction make a difference? Only in the latter patent. Only in the 808? Yes, that's correct. Because you say everywhere that postage I think I have the right one indicia in the earlier two patents appears it's in conjunction with the requirement of actual postage. Well, we took the position that let me back up and perhaps misspoke Judge Bryson I would opt for the second of your two scenarios and what that would do here is make dazzle and envelope very clearly prior art but the question is is well, go ahead. So, I agree with the court if this court were to say that the construction from the district court was incorrect and that one does not need to have .32 actual postage which is our original position and one in which I believe. Well, what difference does it make? I mean, does patents with the exception of the 808 require actual postage? Because they use the word postage. It's the question what does one mean by actual postage? Does it require .32 .41 or can you put this is penalty mail or this is permit number ABC which would be perfectly acceptable. That sounds like a different issue. That's the argument that we made because as the court probably knows dazzle and envelope manager permitted the imprint But the 562 clearly fills that that hole. Yeah. So why do we care? I'm just trying I was responding to Judge Bryson's comment that would it make any difference whatsoever? The difference is yes that it would be perhaps a 102 situation with dazzle and envelope manager if one were to interpret postage amount or postage excuse me to include the imprint in addition to just a number. What about the 808? The same situation there as Judge Bryson and Mr. Gray has discussed with the barcode it does have actual postage. No question about it. Well the barcode is in the dependent claims. Yes. But not in claim 39. Correct. But again 562 has that. The prior the prior is replete with suggestions that the actual amount of postage can be printed through these systems. I don't think that there's any dispute about that your honor. If I may respond to Mr. Gray's with respect to Dr. McDaniel it's true that the declarations are voluminous but I think it's also quite clear with respect to Professor McDaniel at least that most of his statements were absolutely conclusory and without any explanation of the facts on which he based his opinions that he stated and indeed in some instances he made statements concerning the Tiger E paper the 1993 paper particularly that are simply belied by the text of the paper and for instance at page 10406 in paragraph 23 he quotes from the Tiger E paper because secure coprocessors need to handle only a handful of users workstations or PCs are typically single user machines closed and the users are unlikely to require many concurrent transactions large amounts of stable storage should not be needed and then he goes on and says that the paper does not contemplate multiple users or simultaneous users and doesn't contemplate queuing and it's just his  that most of the statements are conclusory so even if that's true and most of the statements are conclusory and many statements are just on their face wrong if we're left with anything wasn't it incumbent upon the district court to either make a credibility determination based on the entirety and what are we supposed to do with that on appeal if there's anything left so it doesn't help us necessarily if it's just most right. I would start reasoning from the proposition that the burden of the issue of material fact is not sufficient to simply say we must have raised some issue of fact in there somewhere. It's incumbent on the party opposing the motion to point out to the court where and what exactly is the genuine issue of material fact that hasn't been done. It wasn't done in their briefs before this court. It wasn't really done in our view in front of Judge Wright. Now, if Judge Wright had tried to craft a written opinion that addressed each and every paragraph of Mr. McDaniel's declaration, his opinion would have filled one of these books of the record. It's simply not possible. But he didn't say it's conclusory. He gave us nothing in terms of why he... You're assuming, are you not, that he gave us nothing? So, I don't think that the case law from the Supreme Court or from this court requires that the district court put down his or her thought processes on each and every paragraph because it's simply not practical. And since this court is reviewing decisions, excuse me, judgments and decisions, um, that would seem to be unnecessary at this point. Well, it's de novo review, so we can compare the affidavit with the references and see whether they're genuine. Exactly, Your Honor, but this court then has put to the same problem that Judge Wright found himself faced with, which is the fact that the Supreme Court does not have a genuine issue of material fact. It's not enough just simply to have a disagreement between two experts, as this court knows, just one saying the other is wrong is not going to give rise to a genuine issue of material fact, and that basically, in my view, is what we have here with Professor McDaniel and Professor Tiger. There was some mention made of the 1993 paper and whether it's prior art or not. I think that it clearly was published in 1993. It's on the... What gives you... Give us the hardest data you have for that proposition. The... You were about to say it was published on the Internet, but do we know that it was on the Internet in 1993? We believe so, and the sites to the record there, Your Honor, are 6416, 8420, paragraph 292, 10843, 1099, 964, 367, and Professor Tiger identified his paper as prior art. Where does he do that?  declaration. Where? What page? At paragraph 292, and the reference to... What page? 8420, I believe, Your Honor. A what? 8420. 8420. Okay. Okay. Is this the reference to was published March 1, 1993? That's correct. What published? In what sense? I mean, I The published is in the sense of being on the Carnegie Mellon website, Your Honor. And this was I couldn't find Put it this way. I couldn't find anything that that laid out that it was on the website publicly available as of 1993. Now, other than the word published, is there any place that that gets elaborated enough from which we could conclude with some degree of confidence that it was actually published in the sense that the publication requirement requires? Well, it's I've given the court the references to the Okay, well to the record that I have. And I think that they do establish that when the court says Well, but we have this index which doesn't really do it. I mean, you one might have expected Professor Tiger to have said, well, I saw the website at that time and it was there and you know, I mean, the website doesn't exist anymore, right? That's the problem. It does, Your Honor. I could get it right now if you are on the internet. You can get the 1993 version of it? No. No, that's correct. That's the problem. Yes. What we have is the question, of course, is accessibility to the public. Published is a synonym for that. And there's further evidence that it was accessible to the public at the pertinent point in time. It was cited in the second paper presented by Professors Tiger and Yee in 1994, which is in the record sites that they gave to the court. And also, as the court knows, the paper was brought to the attention of the PTO by stamps.com in connection with an IDS and a different patent. I don't contend that that constitutes an admission that it's material prior art. I do contend that it's evidence that it was accessible to the public. And in their IDS submission, they state date of publication, place of publication. That is the internet on Carnegie Mellon's website. So clearly, the paper was available. There's no dispute about that. And whether it's the type of paper that somebody would refer to in this area, I think that that's quite clear because the keywords, the search words included in the paper include mail postage stamps and electronic stamps. That's at A9585. So I think that that's pretty clear. I think that I could try to go into detail with the court on the specific discussions  with respect to the patents, but I don't know that that really would be helpful to the court because there are so many of those and I'm not sure I would be responding to any questions that you might have with respect to those patents. Well, taking that as an invitation for us to ask about a different issue, could you address the same issue that I asked Mr. Grace to address with respect to the indefiniteness, the means for determining in the 568 patent? That's just for reference. That's at 15028 is the claim. I'm faced with the proposition here a little bit of proving the null hypothesis, that is that there's no structure that's set forth that corresponds. And it's interesting to me, and it has been throughout this case, that we have Blackboard and the cases that support Blackboard, Aristocrat and Finiserra, Money In and Out, and Ray Donaldson. And it's an unbroken line of cases from this court that caution that one should not confuse enablement with a definite statement under 112 paragraph six. And that's what they do throughout. And what they do is they have Professor McDaniel say, well, one skill in the art could have figured out a way to do it, blah, blah, blah, blah, blah. And that simply does not meet the requirements set forth in Blackboard. And what Mr. Grace points to the court, what he pointed to the court when he was up here was he said, well, we specify these parameters that need to be calculated somehow or need to be used in some fashion. And the failure, it seems to me, in what he said is that he didn't tell the court that there was anything in the specification that says how those parameters are to be used within the system, what is to perform the function that's set forth in the claim. And the columns of the patent to which he referred and which are specifically addressed by Judge Wright in his opinion simply do not tell the user anything about how those parameters are to be used. What is the algorithm or what is the computer actually doing? Well, the problem, of course, with this line of cases is with many propositions is that you reach an absurd point at the end of the line. I mean, it's one thing to say that you can't have a patent that says means for propelling a vehicle and then, let's say, means for propelling a vehicle and getting more than 60 miles per gallon and then have one exemplar and then claim that you get them all. You, here though, I wonder whether this isn't approaching the other end of that spectrum in which you say means for adding two numbers together. If you had that, would that fail for indefiniteness because you didn't show the algorithm as Mr. Graves was pointing out for adding numbers together? Well, I hesitate to engage with Your Honor in trying to draw... I understand, but I'm... Like a meat slicer. I'm really struggling to see if we can have an articulable standard that incorporates my vehicle but leaves out the addition means. I think that there obviously is some point of reason, like the court says, and one can't posit outliers or extremes in any such case and say, well, isn't it true that this is going too far? And you could push me, I'm sure, further than your first example and I wouldn't be forced to agree with you, Judge Bryson, but these series of patents are terrible in terms of their abuse of means plus function, not just in that one, but in the other six that we brought up in our brief that Judge Wright didn't reach but seemed to me to be clearly of the same ilk and I won't belabor the court with those, but I think that what we have is an absolute failure to make even any effort whatsoever to set forth how this might be done and the evil of that is, as this court has pointed out on a number of occasions, that if you allow a claim like that in a means plus function situation, then what you're saying is it will cover all possible means of doing it and that can't be the law. It isn't the law and so what they do is they say, McDaniel comes in and says, well, he even says in some cases, I could think of several ways to do that, but having said that, then he confirms their failure to adequately claim or to specify the structure because the very fact that there are several ways to do it runs us into the problem that these claims present unless there is specific structure that's described to accomplish what needs to be done. Unless the court has any further questions. Thank you very much, Mr. Long. Mr. Graves, I think you have, well, we gave you a lot of extra time, so why don't we just give you a couple of minutes at this point for rebuttal, and if it turns out that you need a little more, we'll extend it. Let's just start with the proposition that you can finish in three minutes. Thank you, Your Honor. I'll do my best. I think one of the most important points to cover is to come back to this issue of whether Professor McDaniel's declaration was conclusory on the differences between the prior art and the asserted claims. I've got three minutes, so I'm not going to use it reading the paragraphs into the record, but I urge the court to review Professor McDaniel's declaration. No, I don't think that it's up to us to review Professor McDaniel's declaration. It's up to you, in your brief, to raise the instances where it raises a genuine issue of material fact, and to the extent that you've raised it in your brief, we'll look at it, but I don't think it's up to us to take a declaration and go beyond what you've argued. Oh, and I would agree with that, Your Honor. We did raise, I mean, I'm perplexed, as to how this idea that we failed to argue from Professor McDaniel's declaration in our papers below has arisen in the appeal. We did. We argued the issues in the briefs. We linked them. Whatever you've argued here, we can consider, but in my view, it's not up to us to look for other issues that you didn't bother to argue in your brief. And we're not asking the court to do that. The issue of whether Professor McDaniel's declaration is conclusory or not is an issue in this appeal. It's hotly contested by both sides. My only purpose in urging the court to review it is that if the court does, it will see that Professor McDaniel's declaration is not conclusory. And in order for PSI to prevail and to avoid a reversal of the district court's entry of summary judgment in its favor on the 991 and the 777, the 451 and the 808, it is to avoid a finding that Professor McDaniel's declaration was not in fact conclusory. It was not conclusory. It laid out his opinions and the reasons therefore. Therefore, the district judge could not simply ignore it, disregard it. The district judge had to take it into consideration and the district court clearly did not do that. What you're arguing is that we should send it back because you didn't mention the declaration. To the extent that the declaration is relevant, you had to brief it on appeal. It is not sufficient to brief and to say, this is a declaration that was ignored. You guys should spend, you know, hours going through the declaration to see if it raises genuine issues of material fact. Oh, and I'm not suggesting that, Your Honor. We did brief it on appeal. This issue concerning... Specific issues that you briefed on appeal. Precisely. The issue of whether Tigar Yee and the 562, for example, obviated the asserted claims of the 991. We pointed out that Professor McDaniel in his declaration identified numerous reasons why that proposition was not true. The district judge was obligated to credit Professor McDaniel's declaration testimony and yet he obviously failed to do so. He made no reference to it. Therefore, as a matter of law, the district judge's entry of summary judgment on those patents on the ground of obviousness must be reversed. So that's one point that I think is very important. A second point relates to the argument concerning the second Poggle declaration and the Decide declaration that was submitted with our reply papers on a co-pending motion. Now, opposing counsel has suggested that the Ninth Circuit authority states that that was improper. It's absolutely the reverse. We cited the Fair Housing case in our briefs, which is highly analogous to our situation, in which the Ninth Circuit stated that a district court is required as a matter of law to consider all evidence submitted in cross motions for summary adjudication or summary judgment and that's exactly what we had here. These are cross motions for summary adjudication. PSI filed a motion for summary judgment on the issue of invalidity. SAMHSA.com filed a cross motion for summary adjudication on PSI's affirmative defenses, including their affirmative defense of unenforceability. In its opposition, PSI stated the judge cannot enter summary judgment against PSI on the unenforceability defense because we have a strong invalidity defense. So PSI actually brought the invalidity issues into that cross motion. In our reply brief, we then pointed out several reasons why their invalidity defense could not stand and included with the proof that we proffered to the court with that reply brief was the second Poggle Declaration and the Decide Declaration. So it addressed exactly the same validity issues which PSI itself brought into play in that cross motion. Under the fair housing case, the district judge was required to consider that evidence and the Ninth Circuit induced the rationale for the fair housing case. The Ninth Circuit was, district judges are required to consider the merits of cross motions anyway so it doesn't impose any additional burden on a district court to require it to consider evidence in one motion that's pertinent to an issue raised in another motion if they're cross motions for summary judgment. We're going to have to wrap up here so if you could conclude. Thank you, Your Honor. Well, I'd be happy to respond to any specific questions that the court has. I think we understand the case and thank you both counsel. Thank you very much, Your Honor. Thank you.